# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————— )
**FLAGSTAR BANK, INC.,** )
      **Plaintiff** )
   )
   )      **CIVIL ACTION**
    **v.** )      **NO. 20-40012-TSH**
   )
   )
**PEGGY J. KOZAK,** )
      **Defendant.** )
—————————————————————— )

## MEMORANDUM OF DECISION AND ORDER
### September 26, 2023

**HILLMAN, S.D.J.**

### Background

Plaintiff, Flagstar Bank, Inc. ("Flagstar" or "Plaintiff") has filed a Complaint against

Peggy J. Kozak ("Kozak" or "Defendant') in which it has asserted a claim for foreclosure against

Kozak and requests that the Court order the foreclosure sale of the Property (as hereinafter

defined) in accordance with such orders of notice and sale as are equitable.

This Memorandum Of Decision and Order addresses Plaintiff's Motion for Summary

Judgment (Docket No. 63), Defendant's Motion to Strike Declaration of Jeffery C. Ankrom

(Docket No. 76), and the Motion to Strike Declaration of Bell Kharson (Docket No. 77).   For the

reasons set forth below, Flagstar's motion for summary judgment is *granted*, and Kozak's

motions to strike are *denied*.

**THE MOTIONS TO STRIKE**

In support of its motion for summary judgment, Flagstar has relied in part on the sworn affidavit of Bella Kharson ("Kharson"), the Early Delinquency Manager at Flagstar, *see Declaration of Bella Kharson* (Docket No. 65-1)("Kharson Affidavit") and the sworn affidavit of Jeffrey C. Ankrom ("Ankrom"), a lawyer from Locke Lord LLP representing Flagstar.  *See Declaration of Jeffrey C. Ankrom* (Docket No. 65-2)("Ankrom Affidavit").  Ankrom has attested that the factual averments in his affidavit are based on personal knowledge and Kharson has attested that the factual averments in her affidavit are based on personal knowledge or her personal review of business records of Flagstar as to which she is competent to testify.

This Court's rules of procedure require that affidavits filed in support of motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56 (c)(4). Kozak makes conclusory allegations that the Ankrom and Kharson Affidavits  are not based on personal knowledge, that the "competence" they recite are not  "'detailed' relative competence as to personal knowledge" and do not include source documents. Kozak does not argue that the affidavits do not meet the requirements of this Court's rules applicable to affidavits filed in support of motions for summary judgment, rather the bulk of her argument focuses on her assertion that the affidavits do not meet the Massachusetts statutory and regulatory requirements applicable to affidavits by a mortgage servicer or its agent.  Nonetheless,

the Court will assume that Kozak is challenging whether the Ankrom and Kharson Affidavits satisfy Rule 56(c)(4).[1]

As argued by Flagstar, the averments made by Ankrom and Kharson are based on personal knowledge-- that Kozak has a different interpretation of certain events and/or conversations involving Ankrom, or that she cannot "recall" the same are not grounds for striking his statements which are based on his personal knowledge. Additionally, Kharson has attested to matters as to which she has personal knowledge and/or would be competent to testify based on her review of Flagstar's business records. Because her testimony and the underlying documents would be admissible in evidence, her affidavit complies with the requirements of Rule 56(c)(4) and Kozak has failed to establish any basis for striking it.[2] Accordingly, Kozak's motions to strike the Kharson and Ankrom Affidavits are *denied.*

## **FLAGSTAR'S MOTION FOR SUMMARY JUDGMENT**

### **Standard of Review**

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing then Fed. R. Civ. P. 56(c) now Fed.R.Civ. P. 56(a)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case." *Sensing v.*

---

[1] In making her argument, Kozak contests the factual bases and accuracy of many of the averments made in the affidavits. The Court notes that the *sworn* factual assertions made by the affiants are supported by citation to record evidence. Kozak, on the other hand, challenges the truthfulness/accuracy of the affiants' averments based on her own unsworn statements without proper citation to record evidence.

[2] The Court agrees with Flagstar that the Massachusetts regulations governing affidavs of loan servicers, or their agents in connection with foreclosure proceedings and the like are not applicable to the Kharson and Ankrom Affidavits.

*Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue  of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted).  The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences." *Id.*  (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."'" *Id.* (citation to quoted case omitted).

**Facts**[3]

Kozak is a retired medial assistant over the age of 72 who currently lives on a fixed income. In 1998, Kozak purchased a residence located at 230 Paxton Street, Leicester, Massachusetts (the "Property"). On or about July 14, 2009, Kozak borrowed $196,343 from Nations Lending Corp (the "Lender") and executed a promissory note (the "Note") to the order of the Lender, its successors and assigns, in which she promised to repay the loan plus interest, in monthly payments commencing September 1, 2009.[4] To secure the repayment of the Note, Kozak granted a mortgage ("Mortgage") against the Property to Mortgage Electronic Registration Systems, Inc., ("MERS") as nominee for Lender, and its successors and assigns. Kozak did not have legal counsel at the closing, she did not receive the closing documents before the closing and signed them without reviewing them because she was "rushed through the signing." The terms of the loan were not explained to her. For example, the "representative" did not tell her that the Mortgage was going to be sold to another entity, Flagstar, through MERS.[5]

---

[3] Rather than provide a statement of material facts which she alleges are in dispute as required by this Court's Local Rules, *see* LR,D.Mass. 56.1 (party opposing summary judgment shall include a concise statement of material facts of record as to which it is contended there exists a genuine issue to be tried *with page references to affidavits, depositions and other documentation*), Kozak has filed her own statement of material facts of record. Moreover, she has not included a supporting affidavit supporting her own factual assertions and does not cite to record evidence for the same. While she does sign her statement of facts under pains and penalties of perjury, she does not aver that her factual assertions are based on personal knowledge. Nonetheless, because Flagstar did not seek to strike Kozak's statement of material facts and because she is proceeding *pro se* (and therefore will be granted some leeway), the Court has considered her statement of material facts and included those *that are relevant to Flagstar's motion for summary judgment* (as will become evident in the Court's discussion of that motion, many of Kozak's factual assertions and legal argument are not relevant to the issues before it). Moreover, the Court has not adopted the many legal arguments and conclusions asserted by Kozak in her statement of facts.

[4] Kozak acknowledges that she sought to refinance the original loan but asserts that she "induced" to sign the Mortgage, and the loan amount of $196, 343 was more than she had sought. She also contends that for the 2009 tax year, the Town of Leicester valued the Property at $180,000 which was much less than the Lender's appraised value (there is no dispute that the amount of the loan was within the Lender's appraised value of the Property). The assertion that she was "induced" to sign a loan for more than the Property was worth relate to matters which took place over 14 years ago and therefore, are likely barred by the applicable statute of limitations. Additionally, Kozak's assertions regarding the value of the Property at the time are not supported by qualified, admissible evidence.

[5] Kozak asserts that the Mortgage included a reference to "MERS as Mortgagee" and which "she as a consumer was to know as Nations Lending Corp." This statement is vague and confusing. In any event, the terms

Kozak now contends that she was concerned about the viability of the terms of the loan, but Jeremy Sopko ("Sopko"), a founder of the Lender, persuaded her of her ability to refinance and therefore, put aside her concerns. Sopko was aware Kozak was an immigrant.

The Mortgage was recorded with the Worcester County Registry of Deeds ("Registry of Deeds") on August 7, 2009. On August 6, 2013, MERS assigned the Mortgage to Flagstar and the assignment was recorded in the Registry of Deeds on or about August 15, 2013. Kozak asserts that the assignment was made without money consideration and without a signatory authority having been referenced. Flagstar is the current owner of the Note and, directly or through an agent, is in physical possession of it.

In 2011, Kozak's employer of twenty-six (26) years retired and she became unemployed; she remained unemployed for over a year.  Kozak filed a Chapter 7 voluntary petition in the U.S. Bankruptcy Court for the District of Massachusetts on April 17, 2012. In the bankruptcy case, Ms. Kozak did not contest Flagstar's ownership of the Note and Mortgage or otherwise assert that she had any claims concerning the Note and Mortgage.  A meeting of creditors was held on May 17, 2012, and no creditors appeared to contest discharging of debts including the mortgage debt.  On July 19, 2012, the United States Bankruptcy Court for the District of Massachusetts entered an order discharging her personal liability on her debts under Chapter 7 of the Bankruptcy Code.[6] Kozak had made all payments due on the Note and Mortgage to Flagstar from September 1, 2009 through December 2012. In late December 2012, Kozak contacted Flagstar seeking a loan modification because she was having difficulty making her loan payments. An unnamed representative told her to stop making her loan payments for three

---

of the Mortgage are clear and speak for themselves.
      [6] Although not mentioned in either party's statement of material facts, Kozak has included copies of documents from her bankruptcy case and it is clear that the Mortgage/Note debt was not discharged.

months after which she would be eligible to seek a loan modification under programs offered to distressed homeowners.  She then defaulted on the Note and Mortgage by failing to make the monthly payment due January 1, 2013, and all subsequent payments. On February 13, 2013, Flagstar sent a default /right to cure letter to Kozak which she never received.[7] Kozak was never sent an offer for a face-to-face meeting within ninety (90) days of the default and was never "visited" and offered a face-to-face meeting at a branch within 200 miles of the Property within ninety (90) days of the default even though Flagstar had a branch in Boston (which is within 200 miles of the Property).

On August 1, 2014, Flagstar petitioned the Massachusetts Land Court for permission to foreclose on the Property.  In May 2015, Kozak submitted a HAMP application.[8] Over a 9–12-month period, Kozak faxed requested paperwork to Flagstar more than six (6) times because Flagstar lost it, claimed it did not receive it, could not access it or needed the information updated. Kozak never received a written loan modification agreement from Flagstar. On June 18, 2014, she received a letter stating she was ineligible for a loan modification even though she was making more money in 2014 (approximately $2,500.00 per month) than when she received the loan (approximately $2092.00 per month). She never received a Net Present Value calculation nor notification that she was eligible to receive one. Kozak contends that a HAMP directive provided that "servicers should not proceed with a foreclosure sale until the borrower has been evaluated for the program and, if eligible, an offer to participate in HAMP has been made."[9]

---

[7] Kozak contends she never received this notice until it was provided to her in discovery by Flagstar in November 2022. While the Court has included factual assertions made by Kozak related to the initial foreclosure proceedings, the Housing Court ultimately rescinded the foreclosure. Simply put, as will be briefly touched upon in the discussion portion of this opinion, the circumstances and events related to the original foreclosure are not relevant to the issues before the Court.

[8] HAMP stands for the Home Affordable Modification Program. HAMP's goal is to offer homeowners at risk of foreclosure reduced monthly mortgage payments that are affordable and sustainable over the long-term.

[9] The Court will assume that this statement accurately reflects a HAMP directive in effect at the time Flagstar instituted the initial foreclosure proceeding against the Property. Kozak then asserts that Flagstar did  not

7

On June 24, 2015, a Power of Attorney, dated that same date, was filed at the Oakland [sic.] County Registry of Deeds appointing an agent of the bank to right to act for Flagstar to make entry on the Property for purposes of foreclosing on the Mortgage as the result of breaches of conditions thereof and to execute all necessary paperwork. On or about May 17, 2016, Flagstar recorded an Affidavit Regarding Note Secured by Mortgage to be Foreclosed ("Note Affidavit") with the Registry of Deeds. The Note Affidavit confirms that Flagstar Bank, FSB is the holder of the Note and certifies that the requirements of Mass. Gen. Laws ch. 244, § 35B have been met.  On an unspecified date, Kozak was visited by a member of the Worcester Anti-Foreclosure Team which notified her of the upcoming foreclosure action which had been noticed in a local newspaper, the Worcester Telegram & Gazette. The notice included the applicable terms of sale.

On August 16, 2016, Flagstar conducted a foreclosure sale of the Property. Flagstar bought the Property. No representative of Flagstar entered onto the Property in connection with the foreclosure proceedings because a resident of the house, Jacob Bruning, prevented them from doing so. Mr. Bruning did not observe any proceedings that looked like an auction.  Kozak never received a post-foreclosure letter identifying the purchaser at auction nor an accounting of the sale.

On December 1, 2017, Flagstar filed an action against Ms. Kozak seeking possession of the Property in Massachusetts Central Housing Court ("Housing Court"). On January 10, 2019, Flagstar filed a motion for summary judgment in the Housing Court Case. On February 7, 2019, the Housing Court (Salvidio, J.) denied Flagstar's motion for summary judgment, finding "that

---

suspend the foreclosure while Kozak was being considered for a HAMP modification. First, it is not clear that the language cited is mandatory. Additionally, Kozak's own statement of the facts indicate that the foreclosure sale took place well after her HAMP application was denied.

the question of whether the Defendant was prejudiced by the lack of a face-to-face meeting to be a genuine issue of material fact precluding summary judgment."  A renewed motion for summary judgment was denied on the same grounds.

On March 11, 2019, Flagstar voluntarily filed a motion to set aside the foreclosure sale and rescind the foreclosure deed. Ms. Kozak assented to the motion which also removed the certificate of entry.  On March 14, 2019,  the Housing Court granted the motion to set aside the foreclosure and entered an order rescinding the August 16, 2016 foreclosure sale and declaring Kozak to be the owner of the Property. The Housing Court never made any findings of fact and never entered any order prohibiting Flagstar from filing a new action for foreclosure or exercising the power of sale.  After March 14, 2019, Kozak was given an opportunity to cure the default, but did not make any payments. On June 19, 2019, Flagstar sent Kozak a notice of default ("Notice of Default") informing her that she must pay $100,006.86, plus any additional regular monthly payment or payments, late charges, fees and charges, which become due, before September 17, 2019, to cure the default on the Mortgage.  Kozak failed to cure the default before the date specified in the Notice of Default.  On June 19, 2019, Flagstar also sent Kozak a letter entitled "90-Day Right to Cure Your Mortgage Default" in compliance with Mass. Gen. Laws ch. 244 § 35A ("35A Letter"). Kozak failed to cure the default before the date specified in the 35A Letter. Enclosed with the 35A Letter, Flagstar sent Kozak a letter entitled "Right to Request a Modified Mortgage Loan" in compliance with Mass. Gen. Laws ch. 244 § 35B ("35B Letter"). Kozak did not send Flagstar an application for modification options at any time after Flagstar sent her the 35B Letter.

On June 6, 2019, Flagstar, through counsel, sent a letter to Kozak by first class and certified mail offering to engage in a face-to-face meeting to discuss options to resolve the

delinquency on the Mortgage.  On July 9, 2019, Flagstar's counsel received a letter from Kozak requesting information regarding "previous face to face meetings, defaults and Right to Cure letters" and related notices sent to her. On August 9, 2019, Flagstar, through counsel, sent a second letter to Kozak by first class and certified mail offering to engage in a face-to-face meeting to discuss options to resolve the delinquency on the Mortgage, and including copies of the Notice of Default, the 35A Letter, the 35B Letter, and a payoff statement good through September 1, 2019.  On August 22, 2019, Flagstar's counsel, made one trip to see her at the Property to make a reasonable effort to arrange a face-to-face meeting.  At that time, Flagstar's counsel hand-delivered a letter at the Property that requested Kozak call him to arrange a face-to-face meeting.  However, Kozak did not call Plaintiff's counsel to arrange a face-to-face meeting after receiving the hand-delivered letter. On February 17, 2020, Kozak wrote a letter to Flagstar requesting an original copy of the Mortgage which was not provided.

On March 23, 2020, Flagstar, through counsel, sent a letter to Kozak by Federal Express and enclosed copies of the following documents:

- the August 9, 2019 letter;

- the June 19, 2019 Notice of Default;

- the June 19, 2019 35A Letter;

- the June 19, 2019 35B Letter;

- a payoff statement good through September 1, 2019;

- Flagstar's responses to Kozak's request for production of documents from the Housing Court matter;

- the Mortgage;

- the Note;

- the Assignment;

- a recorded limited power of attorney;

- the May 17, 2016 Note Affidavit;

- a Certificate of Entry related to the August 12, 2016 foreclosure;

- the foreclosure deed recorded on August 28, 2017; and

- a notice of default dated February 26, 2013.

Kozak, her daughter and her grandchildren, one of which has a serious disability/illness, continue to reside at the Property. They have suffered and continue to suffer distress and financial harm as a result of facing homelessness. Kozak, who is proceeding pro se, contends that during the foreclosure period, she has been unemployed and lost all her savings and other liquid resources while spending money on legal help. Her credit has been seriously damaged because of the foreclosure proceedings.

## Discussion

Flagstar requests that the Court approve its right to foreclose on the Property, that is, that the Court issue a judgement of foreclosure. In support thereof, Flagstar asserts that it has met all the prerequisites for foreclosure under the Mortgage and Massachusetts law.  Kozak does not meaningfully contest that in its latest attempt to foreclose on the Property Flagstar has complied with its obligations under the Mortgage and Massachusetts law. Rather, she argues that the remedy that Flagstar requests is not available under Massachusetts law (no discussion of this argument is merited; simply put, Kozak is wrong). She also asserts based on the Housing Court's order rescinding the August 2016 foreclosure sale that the doctrine of res judicata bars Flagstar from ever foreclosing on the Property. Kozak further asserts that Flagstar has not established sufficient interest in the alleged controversy to pursue a foreclosure action, *i.e.*, it lacks standing. Finally, Kozak contends that Flagstar is not entitled to a judgment of foreclosure because she

was the victim of predatory lending.  Essentially, Kozak seeks to retain ownership of the

Property, to dissolve Mortgage, and have her loan forgiven. While Kozak presents a sympathetic

figure (she, her daughter and her grandchildren, one of whom has a disability, reside at the

Property), for the reasons set forth below, the law does not allow for such an outcome.

<u>Whether Flagstar is Entitled to an Order of Foreclosure</u>

The Court finds that Flagstar is the holder of both the Note and Mortgage. Moreover, on

the record before it, there is no genuine issue of material fact that with respect to the instant

foreclosure proceedings, Flagstar has complied with its statutory obligations under

Massachusetts law and its obligations under the Mortgages and has made a reasonable, good

faith effort to have a face-to-face meeting with Kozak in accordance with HUD regulations (an

attempt which Kozak has continuously and intentionally rebuffed). Accordingly, unless Kozak

has a valid affirmative defense to Flagstar's foreclosure of the Property, Flagstar's motion for

summary judgment must be granted.

<u>Kozak's Affirmative Defenses</u>

Kozak has raised a myriad of affirmative defenses which she argues undermine Flagstar's

right to foreclose on the Property. First, Kozak questions whether Flagstar has sufficient interest

in the "controversy" to pursue this action. The uncontested facts clearly establish that Flagstar is

the legal owner of the Note and that the Mortgage was validly assigned to it. Since Flagstar holds

both the Mortgage and the Note, it has standing to bring this action. *See Culhane v. Aurora Loan

Servs. of Nebraska,* 708 F.3d 282, 291 (1st Cir. 2013)(MERS held  bare legal title as mortgagee

of record and therefore, MERS assignment of mortgage to loan servicer was legitimate and loan

servicer who then held both in interest in the mortgage and the note had the right to exercise the

statutory power of sale).

Kozak argues that she was the victim of predatory lending because the loan amount of $196,343, was more than she was originally seeking from the Lender and assessed value of the Property for the 2009 tax year was $180,000, *i.e.*, the loan was for an amount far greater than the Property was worth.  It is undisputed that the loan amount was within the value ascribed to the Property by the Lender's appraiser. Moreover, Kozak has not proffered any admissible evidence which support her assertion that the loan amount far exceeded the value of the Property, nor has she made any other assertions, supported by admissible evidence or otherwise, that a would support a finding that the loan was predatory. Her statements that the Lender knew she was in immigrant and a woman without more cannot not support a finding that she was the victim of predatory lending and/or discrimination.

Kozak's primary defense to this action is that principles of *res judicata* bar Flagstar from seeking a judgment of foreclosure. More specifically, she argues that the Housing Court's 2019 order rescinding the August 2016 foreclosure sale bars this action. Kozak is relying on the doctrine of claim preclusion under which a valid, final judgment is conclusive on the parties and those in privy with them and prevents re-litigation of all matters that were or could have been adjudicated in the prior action. "Application of the doctrine to preclude a subsequent claim requires that the moving party satisfy three elements: 1) identity or privity of the parties to the present and prior actions, 2) identity of the causes of action, and 3) a prior final judgment on the merits." *Emigrant Mortg. Co., Inc. v. Bourke*, 626 F. Supp. 3d 223, 229 (D. Mass. 2022), *reconsideration denied*, No. CV 21-11133-JCB, 2023 WL 421147 (D. Mass. Jan. 26, 2023).

Kozak is effectively arguing that the Housing Court's order rescinding the August 2016 foreclosure forever bars Flagstar from enforcing it rights under the Mortgage. There are numerous problems with Kozak's legal arguments regarding this defense, however, the Court

need only address one. The Court will assume identity of the parties and that the causes of action are identical. Kozak's argument fails on the third prong—there was never a "final judgment on the merits" which would bar Flagstar from bringing a subsequent foreclosure action.  On the contrary--  the Housing Court denied Flagstar's motions for summary judgment on its action seeking possession of the Property after the August 2016 foreclosure sale on the grounds that there was a genuine issue of material fact as to whether Kozak was prejudiced by Flagstar's failure to initiate a face-to-face meeting with her prior to the foreclosure sale as required under HUD regulations. After the Housing Court's denial of its motions for summary judgment, Flagstar filed a motion to set aside the foreclosure sale and rescind the foreclosure deed. Kozak assented to the motion. In doing so, the Housing Court noted that both parties' claims would be dismissed without prejudice. The Housing Court made no finding that the Mortgage and/or Note were invalid. Given that the violation by Flagstar was eminently curable, there is nothing in the Housing Court's ruling that would bar Flagstar from seeking to institute a new foreclosure proceeding at some future date.  Kozak clearly understood that the rescission did not bar Flagstar from instituting a future foreclosure action as evidenced by her "motion to dismiss" in which she acknowledged that dismissal of Flagstar's action under such circumstances is generally without prejudice but asked that the Housing Court dismiss Flagstar's action with prejudice. The Housing Court declined to do so and made clear that the dismissal was without prejudice.  Accordingly, the principles of res judicata do not bar Flagstar from bringing the instant action.[10]

---

[10] To the extent that Kozak argues that Flagstar is barred from foreclosing on the Property because she did not reinstate the Mortgage after the August 2016 foreclosure sale was rescinded, a protracted discussion is not warranted as the First Circuit has made clear that a mortgage does not become unenforceable five years after either a default or acceleration (the passing of five years being the basis of her argument). *Hayden v. HSBC Bank USA*, 956 F.3d 69, 71 (1st Cir. 2020); *Harry v. Countrywide Home Loans, Inc*., 902 F.3d 16, 19 (1st Cir. 2018).  Additionally, the many arguments and factual assertions which Kozak make regarding matters that would invalidate the August 2016 foreclosure sale (such as the Flagstar's alleged failure to send her a right to cure letter in 2013) are irrelevant to this subsequent foreclosure proceeding and will not be addressed. Kozak's multiple other affirmative defenses are

On the record before the Court, there is no genuine issue of material fact regarding Flagstar's right to foreclose on the Property and its motion for summary judgment is granted. Judgment shall enter for Flagstar, however, the Court shall retain jurisdiction to the extent that Flagstar requires Court orders relative to carrying out the foreclosure sale. Accordingly, on or before October 20, 2017, Flagstar shall submit proposed orders for notice, publication, and sale in accordance with the statutory power of sale.[11]

### Conclusion

It is hereby Ordered that:

    1. Plaintiff's Motion for Summary Judgment (Docket No. 63) is ***granted***;

    2.  Defendant's Motion to Strike Declaration of Jeffery C. Ankrom (Docket No. 76) is ***denied***; and

    3. the Motion to Strike Declaration of Bell Kharson (Docket No. 77) is ***denied***.


                          /s/ *Timothy S. Hillman*
                          **TIMOTHY S. HILLMAN**
                          **SENIOR DISTRICT JUDGE**

---

irrelevant and/or totally lacking in merit and require no further discussion other than the Court will note it agrees with Flagstar's arguments summarily dismissing each such defense.

    [11] While the Court has ordered that judgment enter for Flagstar, it would encourage the parties to engage in discussions as to whether a loan modification would be available to Kozak or given the present state of the real estate market, whether the parties could jointly agree to a sale of the Property for fair market value that would pay off Kozak's deficiency and pay any excess amount realized to her.